CENTRAL ENGINEERING & CONSTRUCTION CO. *vs.*
VINCENZO RASSANO.

FEBRUARY 23, 1949.

PRESENT: Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J.   This is a petition by an employer under the provisions of the workmen's compensation act, general laws 1938, chapter 300, to review an agreement between the parties, approved by the director of labor October 8, 1946, fixing compensation for the respondent employee.   The issue raised by the petition is whether incapacity of the respondent has ended or diminished.   After a hearing in the superior court the trial justice found that such incapacity had ended and that payment of compensation should be

terminated, and a decree to that effect was entered. The respondent's appeal from that decree is now before us.

The third finding of fact contained therein is as follows: "That the employee respondent is no longer incapacitated as a result of his accident." The only question raised by the parties in this proceeding is whether there was legal evidence to support that finding. Petitioner contends that there was such evidence and the respondent takes the contrary position. To determine that question it will be necessary to refer to the medical evidence in some detail.

It appears from the record that on August 21, 1946 the respondent sustained an injury by accident arising out of and in the course of his employment with the petitioner by falling over some pipes, thereby causing a laceration to the back of his head. At the hearing in the superior court the respondent, who was then about sixty-two years of age, testified in substance that he was unable to work; that he suffered frequently from dizzy spells and vertigo lasting five or six seconds and also from headaches; that this dizziness first appeared while he was in the Rhode Island Hospital following the accident and has since continued; and that he had not been so affected before the accident and had always worked steadily.

The evidence shows that respondent was in the hospital twenty-two days for treatment after the accident. Tests taken there established that in addition to his injuries he had tabes dorsalis and lues of the central nervous system; that he was discharged from the hospital by the physician who attended him and was referred to the skin clinic for treatment, which he had been receiving once a week up to the time of the hearing in the superior court. The diagnosis by the hospital authorities of his condition was as follows: Laceration of the scalp, contusion of the brain, compression fracture of fifth cervical vertebra, old, osteoarthritis of cervical spine, and tabes dorsalis.

No medical witness testified for the respondent. Two witnesses appeared for the petitioner, one a neurologist who

examined the respondent at the request of the attending physician, and the other an impartial examiner, appointed by the department of labor, whose report is among the papers in the case. The petitioner also introduced as an exhibit, without objection, a report from the attending physician at the hospital. In addition there was before the court a report of a doctor consulted by the respondent and another from a doctor appointed by the superior court, on motion of the respondent, as an impartial examiner.

In his report dated May 12, 1947 the attending physician at the hospital, after setting out a history of the injury and the treatment given, concluded as follows: "This 61 year old man had a head injury with contusion of the brain. In the course of study he was found to have lues of the central nervous system. He has apparently recovered from the head injury, but is still suffering from the old infection, which is under treatment."

The neurologist examined the respondent January 24, 1947 and diagnosed his difficulty as due to tabes dorsalis or locomotor ataxia which to some extent affects the ability of one so afflicted to maintain his balance. The witness construed the complaint of dizziness as referring to that inability. He also stated in substance that in his opinion the respondent's condition at the time of the examination was due entirely to the disease from which he was suffering and not to the accident. The following excerpts are from the witness' testimony: "Q. Would that condition, an inability to keep his balance, be a probable result of the concussion of the brain? A. In his case, with the physical findings on him, it was due to his tabes dorsalis I would say. Q. And in the absence of the injury, in your opinion this condition of unbalance would have resulted—— A. Yes. * * * Q. That the injury did not bring on or aggravate or light up any condition which brought about the unbalance? A. I do not believe so. * * * Q. Well, are you willing to say positively that the injury, or the accident, in no way contributed to the condition of dizziness—what he calls

dizziness—which followed?  A.  I will say that, yes.  Q. And had nothing to do—  A. Nothing to do.  Q.  —with his complaint after the injury—  A. That is right."

The doctor who had been consulted by the respondent recited in a report the history of his injury and the results of a physical examination he had made on July 31, 1947. No reference to tabes dorsalis or lues of the central nervous system appears therein.  In his conclusion the doctor stated: "This man has a moderate degree of hypertension.  His symptoms of headaches and dizziness could be aggravated or brought about by the accident.  I do not feel that he is able to return to work at the present time.  During the course of the examination, the patient lost his balance several times.  I feel that he would be a poor risk as regards employment."

The impartial examiner appointed by the department of labor examined respondent September 2, 1947, obtained the history of the accident and had the benefit of the reports of the attending physician, the neurologist and the respondent's doctor.  The report of the impartial examiner concluded with the following diagnosis:  "1.  Residuals of Tabes Dorsalis.  2.  I believe the present disability is to a great extent functional and only minimally due to organic changes resulting from syphilis."  Broadly speaking, this witness in his testimony gave as his opinion that the respondent was emotionally affected; that he had always worked; was dependent on work and should return to work to build up his self-confidence.  In cross-examination in respect to the effects of the accident the witness stated: "A.  * * * it is my belief that this man suffered an injury to his head and brain at the time of this accident, this fall; and he, in my opinion, has—his brain, his body—has recovered from the effects of the fall, and that his present symptoms are symptoms of an emotional reaction which has continued since his body recovered from the effects of the fall."

As to the alleged dizziness he said:  "A.  * * *  I believe

that this dizziness is a part of an emotional reaction at the present time, not due to body injury. I do not believe that the dizziness is either the old infection or the blow now. I think it is the emotional reaction that is the big factor here." He also stated: "A. * * * I feel—or did at that time and probably would feel today—that the direct effects of the concussion he has recovered from. I think that is healed. I think his brain is healed, his body is healed, as far as the fall is concerned."

The impartial examiner appointed by the superior court examined respondent April 16, 1948. His report was comprehensive and ended with the following conclusion: "Cause of present disability in my opinion may be equated as follows: 50% constitutional and predisposing factors (hypertension, arteriosclerosis, neurosyphilis); 25% psychoneurotic factor; 25% head injury of 8/21/46."

Obviously these doctors had conflicting opinions as to the cause of respondent's condition. It is, however, not our province to weigh the evidence relating to that issue. That is the duty of the trial justice. We have reviewed the evidence only to determine whether there was any legal evidence to support his findings of fact. After so doing it is our judgment that there is at least direct evidence furnished by his attending physician and the neurologist and reasonable inferences from other testimony which support the finding of the trial justice that respondent was no longer incapacitated as a result of his accident. That being the case, under the provisions of the workmen's compensation act and our holdings thereunder, the above finding in the absence of fraud becomes conclusive. *Baccari* v. *W. T. Grant Co.*, 73 R. I. 376.

Such finding is clearly determinative of this case, and the contention of the respondent that in the circumstances he should be entitled to partial compensation or to the offer of a job by the complainant is not open for consideration and is without merit. In order to recover compensation, whether total or partial, the employee must establish a

causal connection between the accident and his incapacity to work. *DeLallo* v. *Queen Dyeing Co.,* 73 R. I. 325. It is not enough merely to show that he is unable to work, since such inability might be due to a cause unconnected with the accident.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Worrell & Hodge, Lee A. Worrell,* for petitioner.

*Frank C. Cambio,* for respondent.